AUTOMATIC PAPER MACHINERY CO., Inc., v. MARCALUS MFG. CO., Inc., et al.

Civ. No. 2826.

District Court, D. New Jersey.

Jan. 12, 1944.

Young, Shanley & Foehl, of Newark, N. J. (George E. Middleton, of New York City, of counsel), for plaintiff.

Wall, Haight, Carey & Hartpence, of Jersey City, N. J. (Samuel E. Darby, Jr., of New York City, of counsel), for defendants.

SMITH, District Judge.

This is a civil action under the patent laws to enjoin the infringement of a patent and to compel an accounting for profits. The plaintiff is admittedly the owner of the patent in suit under an assignment by the defendant Nicholas Marcalus. The only issue raised in the pleadings of the respective parties is that of infringement.

The action is before the court at this time on a motion for summary judgment filed by the plaintiff pursuant to Rule 56 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and is submitted on the pleadings, affidavits, depositions, and exhibits. It clearly appears from this record that there is "no genuine issue as to any material fact" within the meaning of the said rule.

It is conceded by the plaintiff and the defendants that the issue of infringement may be decided on the present record. The patent in suit is a simple one and may be construed by the court without the assistance of experts. This is equally true of the prior art patent, upon which the defense of non-infringement primarily rests. The ultimate issue of fact, that of infringement, as here raised, is subordinate to the principal issue of law, the construction of the patents. The parties are in substantial agreement on the evidence and admit that on a trial of the action no additional evidence would be offered.

The plaintiff, Automatic Paper Machinery Company, Inc., is, and was since February 2, 1932, the owner of Patent No. 1,-843,429, issued on the application of the defendant Nicholas Marcalus, who, prior to the issuance thereof, assigned all right, title, and interest therein to the plaintiff. The patent issued on the application as filed and after the said defendant had withdrawn from the plaintiff, of which he was, at the time of the assignment, and had been since 1924, an officer and employee.

The defendant Nicholas Marcalus, under circumstances not material to the present controversy, withdrew from the plaintiff in 1931, and in 1932 organized the defendant Marcalus Manufacturing Company, a corporation, of which he is, and has been since its organization, the president and principal stockholder. The only other officers and stockholders are, and have been, his wife and son. The defendant Marcalus Manufacturing Company is undoubtedly the alter ego of the defendant Nicholas Marcalus.

The defendant Marcalus Manufacturing Company is, and has been since its organization, engaged in the manufacture of dispensing boxes, in competition with the plaintiff. It is here charged that the machine or press employed by this defendant in the manufacture of the said boxes is an infringement of the patent in suit, and particularly claims 3, 4, and 7 thereof.

The patent in suit, hereinafter referred to as the Marcalus patent, embraces eleven claims and covers "a method and machine for mounting a cutting strip of a hard nonmetallic substance on an edge of a box blank." Claim 4, which is typical, defines the machine as follows: "In a press for mounting a cutter upon a box blank, the combination of a reciprocable ram, means for feeding a sheet of cutter material into overlapping relation to a box blank beneath the ram, means for severing a cutter from the sheet and securing it to the blank on

each downward movement of the ram, and means operated by each upward movement of the ram for actuating the sheet feeding means."

The method claims, 10 and 11, are directed to the successive operations performed by the respective elements of the machine. It seems unnecessary, therefore, to separately consider these claims.

The accused machine is identical in its basic structural elements with the combination defined in the quoted claim. This identity is easily demonstrated by comparing the elements of the invention, as defined in the quoted claim, with the elements embodied in the accused machine. This comparison, with the elements of the accused machine described in parentheses, follows: "In a press for mounting a cutter upon a box blank," (a punch press of common construction adapted to the peculiar operations) "the combination of a reciprocable ram," (a ram of common construction adapted to the peculiar operations) "means for feeding a sheet of cutter material into overlapping relation to a box blank beneath the ram," (a delivery roller and a pair of feed rollers arranged in series to guide and feed the material to a pair of cutting dies) "means for severing a cutter from the sheet and securing it to the blank on each downward movement of the ram," (a pair of serrate cutting dies, one fixed and the other moveable, so mounted above an anvil as to permit the severance of the material and its attachment to the box blank in a single operation) "and means operated by each upward movement of the ram for actuating the sheet feeding means." (a combination of a ratchet wheel and a reciprocating pawl so mounted that on each upward movement of the ram the ratchet wheel is moved counterclockwise, thereby rotating the feed rollers).

Any doubt on the question of encroachment is dissipated upon reference to the specifications of the patent. It is obvious that the accused press is similar in both construction and operation to the press described and illustrated in the specifications, and differs only in the arrangement of its structural elements. This rearrangement of elements, without the production of any new or different result, is not a sufficient departure from the invention to avoid the charge of infringement.

The defendants, in support of their defense of non-infringement, offer in evidence the Inman patent (No. 1,036,851), which expired on August 27, 1929, more than two years before the Marcalus patent issued. It is the contention of the defendants that the accused machine follows the teachings of the Inman patent, which they have a right to appropriate without subjecting themselves to liability for infringement.

The Inman patent is a complete anticipation of the Marcalus patent. The subjects of the respective patents are substantially identical and are adapted to, and intended for, the same use. The machine of the Inman patent differs from the machine of the Marcalus patent only in the arrangement of its structural elements. It is significant that the accused machine reads element for element on the claims of either patent, and without the substitution of equivalent expedients.

It is obvious that under these facts the principal question presented for decision is one of law—May the defendants defeat the assignment and the estoppel inherent therein by their resort to the prior art? It is our opinion that they may not.

It is conceded that under well-settled principles the assignor of a patent, although estopped to deny the validity of his patent, is free to deny and meet the charge of infringement made by his assignee. This general rule, however, is not without limitation. The limitation, as here applicable, was defined by the Supreme Court in the case of Westinghouse Electric & Manufacturing Co. v. Formica Insulation Co., 266 U.S. 342, 350, 45 S.Ct. 117, 120, 69 L.Ed. 316, wherein the rule was stated as follows:

"If one lawfully conveys to another a patented right to exclude the public from the making, using and vending of an invention, fair dealing should prevent him from derogating from the title he has assigned, just as it estops a grantor of a deed of land from impeaching the effect of his solemn act as against his grantee. The grantor purports to convey the right to exclude others, in the one instance, from a defined tract of land, and in the other, from a described and limited field of useful arts. The difference between the two cases is only the practical one of fixing exactly what is the subject-matter conveyed. A tract of land is easily determined by survey. Not so the scope of a patent right for an invention.

"As between the owner of a patent and the public, the scope of the right of exclusion granted is to be determined in the light

of the state of the art at the time of the invention. Can the state of the art be shown in a suit by the assignee of a patent against the assignor for infringement to narrow or qualify the construction of the claims and relieve the assignor from the charge? * * *. We think, * * *, in view of the peculiar character of patent property, * * * the state of the art may be considered. Otherwise the most satisfactory means of measuring the extent of the grant the government intended and which the assignor assigned would be denied to the court in reaching a just conclusion. *Of course, the state of the art cannot be used to destroy the patent and defeat the grant, because the assignor is estopped to do this.* But the state of the art may be used to construe and narrow the claims of the patent, conceding their validity. The distinction may be a nice one but seems to be workable." (Emphasis by this Court.)

The rule permits the introduction of evidence of the prior art for the sole purpose of defining the limits of the patent grant and the coextensive estoppel, but the limitation embodied in the rule precludes the introduction of such evidence for the purpose of destroying the grant and defeating the assignment. The application of the rule is clearly circumscribed by the limitation.

■ The claims, as the measure of the patent grant, determine the scope of the estoppel, and, as between the assignor and the assignee, should be liberally construed so as to prevent any derogation of the assignment. The estoppel, as thus determined, extends to every device or method within the fair meaning of the claims. Leader Plow Co. v. Bridgewater Plow Co., 4 Cir., 237 F. 376, 377; Piano Motors Corporation v. Motor Player Corporation, 3 Cir., 282 F. 435, 437; Libbey Glass Mfg. Co. v. Albert Pick Co., 7 Cir., 63 F.2d 469, 470; Stubnitz-Greene Spring Corp. v. Fort Pitt Bedding Co., 6 Cir., 110 F.2d 192, 197. Since the claims must be construed in the light of the prior art, the assignor may invoke the prior art but for the sole purpose of limiting the claims and their coextensive estoppel. The assignor, however, may not invoke the prior art for the ostensible purpose of limiting the claims, but for the real purpose of challenging their validity for lack of novelty. Alvin Mfg. Co. v. Scharling, C.C., 100 F. 87; Hurwood Mfg. Co. v. Wood, C.C., 138 F. 835; Automatic Switch Co. v. Monitor Mfg. Co., C.C., 180 F. 983; Piano Motors Corporation v. Mo-

tor Player Corporation, supra; Swan Carburetor Co. v. General Motors Corporation, D.C., 42 F.2d 452, affirmed 6 Cir., 44 F.2d 24; Libbey Glass Mfg. Co. v. Albert Pick Co., supra; Cross Paper Feeder Co. v. United Printing Mach. Co., D.C., 220 F. 313, modified 1 Cir., 227 F. 600. The assignor will not be permitted to defeat the estoppel by indirection.

■ It seems reasonably clear that under these principles the defense of non-infringement, although available to the defendants, may not rest, as it does here, solely on the Inman patent. This patent not only negatives infringement but it invalidates the Marcalus patent and defeats the assignment. If we were to permit the defense of non-infringement to rest on the Inman patent, the defendants would achieve, by indirection, the destruction of the Marcalus patent and the defeat of its assignment, and this the defendants may not do. But see Casco Products Corporation v. Sinko Tool & Mfg. Co., 7 Cir., 116 F.2d 119, 121; Dixie-Vortex Co. v. Paper Container Mfg. Co., 7 Cir., 130 F.2d 569, 577. These decisions, however, were in suits by licensors against their licensees.

■ The contention of the defendant Marcalus Manufacturing Company that the estoppel does not extend to the corporation is untenable. It is well established that the estoppel is effective against the assignor and all those in privity with him, including a corporation of which he is an officer and stockholder. Mathews Gravity Carrier Co. v. Lister, C.C., 154 F. 490; Onondaga Indian Wigwam Co. v. Ka-Noo-No Indian Mfg. Co., C.C., 182 F. 832; Leader Plow Co. v. Bridgewater Plow Co., supra; Piano Motors Corporation v. Motor Player Corporation, supra; Buckingham Products Co. v. McAleer Mfg. Co., 6 Cir., 108 F.2d 192.

■ The affirmative defenses of laches and estoppel which the defendants raise for the first time in their answering affidavit, are not considered because they were not pleaded as required by Rule 8(c) of the Rules of Civil Procedure. It is our opinion, however, that the facts stated in the affidavit will not support either defense, and for that reason we are not inclined to grant the defendants leave to amend their pleading.

■ The machine used by the defendants in the manufacture of dispensing boxes is an infringement of the patent in suit, the validity of which the defendants are

estopped to deny. The said infringement will be enjoined and the defendants will be required to account to the plaintiff for the profits realized from this use of the infringing machine.

The plaintiff shall submit, on notice to the defendants, a proper decree.