**M. M. BUSINESS FORMS CORPO-
RATION, Appellant,**

v.

**UARCO, INCORPORATED, Appellee.**

**No. 72-1669.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 5, 1972.

Decided Feb. 7, 1973.

———◆———

Jerome R. Cox, Columbus, Ohio, for appellant; Cennamo, Kremblas & Foster, Columbus, Ohio, Fay, Sharpe & Mulholland, Cleveland, Ohio, of counsel; Frank H. Foster, Columbus, Ohio, on brief.

James C. Wood, Chicago, Ill., for appellee; Eugene J. Mahoney, Columbus, Ohio, of counsel.

Before PHILLIPS, Chief Judge, PECK, Circuit Judge, and O'SULLI-VAN, Senior Circuit Judge.

JOHN W. PECK, Circuit Judge.

Peter Fabbri has owned and operated a television and radio repair business in Detroit, Michigan, for over fifteen years. In May 1967, Fabbri established the appellant corporation with himself as President, Treasurer, and principal shareholder. The purpose of this enterprise was to sell business forms, particularly a form for television servicemen. After composing and obtaining a copyright for the form in question, appellant approached appellee, a nationwide printer of business forms, and arranged to have a large quantity of the forms printed. These, however, were ultimately rejected by appellant on the apparent grounds that appellee refused to print a copyright notice thereon. The forms, with the copyright notice, were printed elsewhere. Appellant then passed out several promotional packages to television service dealers. Subsequently, one of appellee's salesmen conferred with one of those dealers, stated appellant's copyright was meaningless and produced a form which appellant claims is " . . . almost an exact duplicate of [appellant's] form." Suit was filed in the District Court alleging unfair competition and infringement of plaintiff-appellant's copyright.

Jurisdiction was invoked under Title 28, U.S.C. § 1338. The District Court, 347 F.Supp. 419, found the form was not copyrightable. Only that part of the judgment relating to the copyright is appealed from.

The form in question is composed of two layers of paper and a bottom layer of cardboard, with each layer separated by carbon paper. Each layer contains the same printing. The cardboard layer has two additional, detachable side flaps. One is a customer's claim check and the other is to be attached to the equipment. The form allows a repairman to record the nature of the repairs performed and the corresponding expense. Spaces are included for such items as authorized repairs, miscellaneous services, deferred payment charge, sales tax, subtotal, deposit, balance and special instructions. Customer authorized repairs performed by the serviceman can be reflected by an appropriate notation on the form. Space is provided for entry of the customer's name, address and signature. The dealer's name appears at the top right of the form. In addition, three paragraphs of printing entitled "Guarantee"[1], "Storage Fee Provisions"[2] and "Chattel Mortgage Provisions"[3] appear on the form.

1. The "Guarantee" provision provides as follows:
 "Because of the complex nature of electronic circuitry, predicting or preventing future breakdowns is impossible. We cannot guarantee any other parts or services not performed or stated in this contract. All parts used are first quality and guaranteed for ninety days. All 'same trouble' Complaints must be received by us in 48 hours, otherwise subsequent repairs will be charged for at the regular prevailing rates."

2. The "Storage Fee Provisions" paragraph provides as follows:
 "For repairs/services rendered, and value received the undersigned hereby authorizes the dealer to sell or otherwise dispose of the Chattel described above, if not redeemed by the undersigned or his duly authorized agent within sixty (60) days from date service is completed upon said Chattel. Monies received from the sale of said Chattel shall be first applied to the service charges and cost of sale, the balance of said monies' shall be paid to the undersigned.
 "If said Chattel is unsaleable, then the undersigned hereby agrees to pay Dealer a storage fee of Fifty ($.50) Cents per day commencing the 61st day from date service upon said Chattel is completed. Said storage fee is to run until the undersigned has paid Dealer for all services performed upon said Chattel, plus, Storage Fees owing to date of said payment."

3. The "Chattel Mortgage Provision" provides as follows:
 "For repair services rendered, and value received the undersigned being justly indebted to the Dealer, and for the purpose of securing payment of said debt, hereby grants to Dealer a Security Interest (Chattel Mortgage) in the above property until Customer has paid in cash all amounts owing to said Dealer, [sic] Customer shall not misuse, sell, incumber, secret, or otherwise dispose of

Appellant claims it is the author's manner of expression and not the intellectual content of his writing which must be novel and which is protected by a valid copyright. It contends the District Court mistakenly examined the creativity, the meaning and the legal effect of the author's work rather than the novel arrangement of words, style and manner of presentation. Appellant argues that if the words could achieve the same end, but are stated in different language, then they are copyrightable. Originality, according to appellant, lies in differences of language or manner of expression and not in differences in ideas, concepts and legal arrangements.

Appellee argues the language in question is but standard, usual legal language in the public domain which is used to establish chattel mortgage rights and which has proven effective through prior use.

 Generally, forms, including blank forms, which are intended to be used for recording facts are not the proper subjects of copyright. See, 37 C.F.R. § 202.1(c) and (d). Thus, based on this regulation, the arrangement of vertical and horizontal lines on a business form is not copyrightable and appellee's reproduction of a form similar to appellant's form could not be the basis for an infringement action. As noted by the District Court, the degree of protection afforded to a form by a copyright is determined by what is actually copyrightable and not by the document's entire contents. See, Jackson v. Quickslip Co., 110 F.2d 731 (2d Cir. 1940). Accordingly,

the issue before this Court must be restricted to the copyrightability of the "Guarantee", the "Storage Fee Provisions" and the "Chattel Mortgage Provisions."

 To obtain a valid copyright, the material in question must be an original product.[4] Roth Greeting Cards v. United Card Co., 429 F.2d 1106 (9th Cir. 1970); Gelles-Widmer Co. v. Milton Bradley Co., 313 F.2d 143 (7th Cir. 1963), cert. denied 373 U.S. 913, 83 S.Ct. 1303, 10 L.Ed.2d 414; Alfred Bell Co. v. Catalda Fine Arts, 191 F.2d 99 (2d Cir. 1951). Of course, copyright protection is not available for ideas but only for the expression of ideas. Mazer v. Stein, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954). The degree of originality required to obtain a copyright has been held to be " . . . little more than a prohibition of actual copying." Alfred Bell Co., *supra*, 191 F.2d at 103. Clearly the contribution by an author must amount to more than a trivial variation; any "distinguishable variation" resulting from an author's independent creative endeavor will constitute sufficient originality.[5] Alfred Bell Co., *supra*, 191 F.2d at 102–103; Amsterdam v. Triangle Publications, Inc., 189 F.2d 104 (3d Cir. 1951).

We agree with the District Court that the provisions in question do nothing more than make a mosaic of the language appearing on other existing forms already in the public domain. Mr. Fabbri testified he drafted the "Guarantee" provision without copying from any other form but felt he "wasn't capable" of pre-

said Chattel during the period of payment to Dealer. There is no outstanding Lien, Mortgage or Security Interest of any kind against said Chattel. Upon failure to pay said indebtedness when due, the entire amount owing shall immediately become due and payable, and Dealer may without demand or notice exercise his right to take possession of said Chattel wherever located. Upon default, the secured party shall be entitled to reimbursement from the undersigned for all reasonable legal expenses, includ-

ing Attorney Fees involved in collection of said indebtedness."

4. Although neither the Constitution (Article I, Section 8) nor the federal Copyright Act expressly requires originality, "[t]he courts have uniformly inferred the requirement." Nimmer on Copyright, § 10 at 32 (1972 ed.).

5. Thus, even if an author were to independently create a product identical to a previous work, a copyright would be available. See, generally, Nimmer on Copyrights § 10.1 at 34 (1972 ed.).

paring the other provisions. As a result, he hired an attorney to draft the remaining provisions. The attorney testified his efforts consisted of examining other storage fee and chattel mortgage provisions prepared either by his office or by other attorneys and then piecing together the pertinent parts as well as revising the language and word sequence. The results of these efforts depict substantial similarity to "Guarantee", "Storage Fee Provisions" and "Chattel Mortgage Provisions" found in various forms which Mr. Fabbri had received or used in his business as a television repairman.

 We hold that appellant's product does not reflect the requisite originality. Even though word arrangements have been altered, they are at best merely a paraphrasing of earlier forms.[6] There is nothing recognizably different from the language used in form books or earlier business forms. Elementary legal words and phrases are in the public domain and no citizen may gain monopoly thereover to the exclusion of their use by other citizens. Mr. Fabbri's attorney testified that his effort was focussed on syntax changes and the addition of the words "security interest" in order to use terms consistent with the Michigan Uniform Commercial Code. The admitted lack of original legal research enforces our conclusion that creative, original work is lacking. The "Guarantee" provision is substantially the same as that contained in earlier forms Mr. Fabbri used in his business. Similarly, the "Chattel Mortgage Provision" is substantially the same as earlier forms and, further, it contains verbiage identical to what was rejected as copyrightable material in Donald v. Zach Meyer's T.V. Sales and Service, 426 F.2d 1027 (5th Cir. 1970). The "Storage Fee Provision" is actually patterned on the chattel mortgage provision and is in substance no different from bailments and the language of warehousemen who charge for the storage of goods if left beyond a given period of time. Accordingly, we see no distinguishable variation in any of these simplistic legal arrangements that can be attributed to the drafter's own creativity.

The judgment of the District Court is affirmed.

---

6. The author must show ". . . that his work contains some substantial, not merely trivial, originality." Chamberlin v. Uris Sales Corp., 150 F.2d 512, 513 (2d Cir. 1945) ; see, also, Donald v. Zach Meyer's T.V. Sales and Service, 426 F.2d 1027, 1030 (5th Cir. 1970).